**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BRENDA SHIRLEE DAVIS, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No.  14-1221-MLB |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action reviewing the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and the court is prepared to rule. (Docs. 18, 23, 24).

**I. General Legal Standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a

quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

    The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find

non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

    The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the

claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

## II. History of Case

On December 20, 2012, administrative law judge (ALJ) Rhonda Greenberg issued her decision. (R. at 8-25). Plaintiff alleged that her disability began November 1, 2009. (R. at 11). At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairments: epilepsy, depression and anxiety (R. at 13). At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 13-14). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform past relevant work and therefore concluded that plaintiff was not disabled at any time. (R. at 19-20).

## III. Analysis

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly weigh her credibility. The ALJ discussed plaintiff's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In terms of the claimant's alleged [sic] [symptoms] An EEG confirmed that the claimant has idiopathic generalized seizures (Exhibit 10F). The record contains conflicting information. The claimant testified that since 2008, her grand mal seizures have gotten progressively more frequent

-4-

> and more violent causing physical injuries, most recently in August 2012. However, the medical record contradicts much of this testimony. The claimant told Janet Hawthorne in December 2010 that she has not had a grand mal seizure in two years (Exhibit 1 F). She told her primary care doctor that her grand mal seizures are controlled on medications, and that the last such seizure occurred several years earlier (Exhibit 2F). At another appointment, she told this source that she is doing well on medication and has had no seizures (Exhibit 2F). While the record does support the possibility of an injury in August 20 11, this denotes one grand mal seizure in a several year span.
>
> The claimant testified to thirty petit mal seizures a day and the undersigned observed that the claimant's head frequently jerked during the hearing. However, the medical record contains conflicting information. The claimant told Dr. Hawthorne she has petit mal seizures on a regular basis without defining what that basis was since the age of five (Exhibit 1 F). She told her treating source on one occasion that she gets absence seizures on and off throughout the day (Exhibit 2F), however, at another appointment she said that she has no seizures on the medication, but that the medication was making her drowsy. She was told to reduce the medication until she adjusted to the side effects, and then restore the medication to its effective level (Exhibit 2F). More recently, she told her treating source that she can go months without the petit mal seizures and described the absence seizures as "rare" (Exhibits 6F and 11F). Thus, once an effective combination of medication was prescribed, the claimant's petit mal seizures occurred with a lot less frequency than the claimant portrayed at the hearing.

(R. at 17).

Plaintiff contends that the ALJ's credibility determination was improperly evaluated and based on plaintiff's ability to perform activities of daily living. (Doc. 24 at 5). The ALJ, as the finder of fact, is ideally suited to assess credibility, and the Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010). Generally, an ALJ's credibility determinations are treated as binding on review, recognizing that symptoms are sometimes exaggerated when applying for government benefits. Talley v.

Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

The court finds that the ALJ adequately explained her decision that plaintiff's testimony was not entirely credible. The medical records do contradict plaintiff's testimony concerning the frequency of her seizures. Therefore, the ALJ's finding is supported by substantial evidence. Wilson, 602 F.3d at 1144.

### B. Ability to Stoop

Plaintiff contends that the ALJ's finding that plaintiff could bend or stoop "occasionally" was error because it is not supported by the evidence. In support of her argument, plaintiff cites to her testimony in which she states that stooping is hard for her and she has to have someone help her up after she gets down. (R. at 47). The ALJ, however, cited Dr. Hitchcock's opinion in her decision. Dr. Hitchcock opined that plaintiff did not have any exertional limitations. (R. at 19). The ALJ found Dr. Hitchcock's opinion persuasive and accorded it great probative value.

Therefore, the court finds that substantial evidence supported the ALJ's determination that plaintiff could bend or stoop occasionally.

### C. Step 4 Determination

At step four, the ALJ is required by social security ruling (82-62) to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given her residual functional capacity. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). At each of these three phases, the ALJ must make specific findings. Id. When

the ALJ essentially skips the second phase of the step four analysis by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case shall be remanded in order for the ALJ to make the specific factual findings regarding the demands of claimant's past relevant work. <u>Banks v. Colvin</u>, 547 Fed. Appx. 899, 904 (10th Cir. Dec. 10, 2013); <u>Clardy v. Barnhart</u>, 2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

Here, after determining plaintiff's RFC, the ALJ essentially ignored the second and third phase of the analysis.[1] (R. at 19). More importantly, the ALJ failed to inquire into the mental demands of plaintiff's past work. <u>See</u> <u>Winfrey</u>, at 1024 (holding that when a claimant has a mental impairment, the ALJ must "obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the claimant's mental impairment is compatible with the performance of such work."). Moreover, the ALJ determined that plaintiff could do <u>all</u> her past work even though the vocational expert opined that plaintiff could only work as a cleaner and dietary aide.[2]

The ALJ in this case did not make the necessary findings

---

[1] Defendant argues that the ALJ's decision was supported by substantial evidence because the vocational expert issued a written analysis of plaintiff's past jobs which was contained in the record. (Doc. 23 at 7). Defendant's own regulations, however, require the ALJ to make findings of fact in the <u>decision</u> concerning the mental and physical demands of the past work and plaintiff's ability to perform those demands. This was not done.

[2] Defendant asserts that this was merely a technical error. The court, however, cannot conclude that this was a technical error in light of the fact that the ALJ failed to comply with S.S.R. 82-62.

regarding the physical and mental demands of plaintiff's past work. Unlike Doyal v. Barnhart, 331 F.3d 758 (10th Cir. 2003), cited by defendant, the ALJ did not quote the VE's testimony with approval in support of her own findings regarding the physical and mental demands of plaintiff's past work. Given the fact that plaintiff's limitations included postural, environmental and mental limitations, it was critical for the ALJ to make findings as to the postural, environmental and mental demands of the cleaner and dietary aide positions. The ALJ did not do so. Furthermore, it would have been impossible for the ALJ to quote the VE's testimony with approval in support of her findings at phase two regarding the postural, environmental and mental demands of the cleaner and dietary aide positions since the VE never testified regarding the postural, environmental or mental demands of those positions. The VE simply testified that a person with the RFC limitations set forth by the ALJ could perform her past relevant work.

The social security ruling, SSR 82-62, and the case law set forth above clearly state that the ALJ must make specific findings of fact as to the physical and mental demands of the past job. In Winfrey, the 10th Circuit held that the VE may supply information to the ALJ at step four concerning plaintiff's past relevant work, and the ALJ may rely on that information, but the ALJ must make the required findings on the record. Winfrey, 92 F.3d at 1025. In this case, the VE did not testify regarding the postural, environmental or mental demands of the cleaner and dietary aide positions, and the ALJ did not make any findings as to the physical and mental demands of the positions. When, as in this case, the ALJ makes findings only about

-8-

plaintiff's limitations, and the remainder of the step four assessment takes place in the VE's head, the court is left with nothing to review.  Winfrey, 92 F.3d at 1025.

It may well be that upon remand, the ALJ will reach the same conclusion after making the findings required by SSR 82-62. However, SSR 82-62 is defendant's requirement, and the ALJs have the responsibility to know and follow defendant's requirements.

Therefore, this case will be remanded to the ALJ to make findings about both the physical and mental demands of plaintiff's past work, and to reassess her ability to perform such work in light of those findings.

**IV. Conclusion**

Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and remanded for further proceedings consistent with this memorandum and order.

IT IS SO ORDERED.

Dated this   4th   day of August 2015, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE